**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MESAFINT BEYENE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HILTON HOTELS CORPORATION,**<br><br>**Defendant.** |

**Civil Action 08-01972  (HHK)**

**MEMORANDUM OPINION & ORDER**

Plaintiff Mesafint Beyene brings this action against his employer, Hilton Hotels

Corporation ("Hilton"), asserting claims of discrimination, retaliation, and harassment in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*,

intentional infliction of emotional distress, negligent hiring and retention, and invasion of

privacy.  Before the Court is Hilton's motion for summary judgment [#25].  Upon consideration

of the motion, the opposition thereto, and the record of the case, the Court concludes that the

motion should be granted in part and denied in part.

**I.  BACKGROUND**

Beyene has been employed by Hilton since 1999, where he is a food server in the room

service department at the Hilton Washington.  He is a native of Ethiopia and a member of the

Ethiopian Orthodox Tewahido Religion Church.

**A.      Interactions with Chowdhury and Salah**

Beyene's case centers primarily on his interactions with two co-workers, Jaman

Chowdhury and Yazan Salah.  In approximately May 2007, Beyene reported to the U.S. Secret

Service, the Federal Bureau of Investigation, and the Security Director at the Hilton Washington that he had heard Chowdhury and Salah threaten to kill then-President George W. Bush as well as make comments "favoring terrorist organizations, against the Jew [sic], denouncing Christianity and the West."  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Ex. 3 (Decl. of Mesafint Beyene (Nov. 22, 2010)) ("Beyene Decl.") ¶ 16; *see also* Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. A (Dep. of Mesafint Beyene (July 1, 2009)) ("Beyene First Dep.") at 50, 63.  The Hilton Washington Security Department investigated Beyene's report about Chowdhury and Salah but was unable to substantiate Beyene's allegations.  Def.'s Mot., Ex. G (Decl. of Ahmed Niazi, Director of Security, Hilton Washington (Oct. 28, 2010)) ¶¶ 4, 6.

According to Beyene, Chowdhury and Salah became aware that Beyene had made this report, and began to threaten and harass him.  Beyene First Dep. at 55–56, 76; Def.'s Mot, Ex. B (Dep. of Mesafint Beyene (Sept. 28, 2010)) ("Beyene Second Dep.") at 76.  These threats allegedly included threats on his life, such as threats to cut his throat and send his head to Africa. *See* Beyene Decl. ¶ 14; Def.'s Mot., Beyene Second Dep. at 120.  He also avers that Chowdhury and Salah harassed him when they saw him reading the Bible in the workplace.  Beyene Decl. ¶ 10.  Beyene complained about Chowdhury and Salah's threatening and harassing conduct to Hilton management, but the harassment allegedly persisted for almost three years.  Def.'s Mot., Beyene Second Dep. at 76.

**B.      Hilton's Response**

As a result of Beyene's complaints, the Human Resources Department at the Hilton Washington launched an investigation into Chowdhury and Salah's conduct toward Beyene.  The

investigation included, at least, interviews of Beyene, Chowdhury, Salah, and two other potential

witnesses, Hassan Boudieh and Omar Farouk.  Def.'s Mot., Ex. E (Decl. of Atlabachew Aklilu

(Oct. 29, 2010)) ("Aklilu Decl.") ¶¶ 3–5; Beyene Second Dep. at 87; Def.'s Mot., Ex. C (Decl. of

Patricia Buckley (Oct. 28, 2010)) ("Buckley Decl.") ¶¶ 7–9; Def.'s Mot., Ex. H (Dep. of Patricia

Buckley (Aug. 9, 2010)) ("Buckley Dep.") at 13–14.[1]  Based on these interviews, Hilton was

unable to corroborate Beyene's complaints.  Aklilu Decl. ¶¶ 3–5; Def.'s Mot., Ex. D (Dep. of

Atlabachew Aklilu (Aug. 16, 2010)) ("Aklilu Dep.") at 11; Def.'s Mot., Beyene Second Dep. at

25; Buckley Decl. ¶¶ 9, 11.

Despite Beyene's complaints about Chowdhury and Salah, Hilton kept Beyene on the

same work shifts as Chowdhury and Salah, where they shared common work areas.  Pl.'s Mot.,

Aklilu Dep. at 27.  Further, Hilton denied Beyene's request to transfer to a different department.

Pl.'s Opp'n, Beyene Second Dep. at 166.

Following his complaints about Chowdhury and Salah, Beyene avers that Hilton also

engaged in retaliatory behavior, including causing him to receive two unjustified "write-ups."

Beyene First Dep. at 89–90.[2]  Additionally, Beyene alleges that Hilton gave him a different

---

[1]     Peter Hill, the then-Director of Human Resources at the Hilton Washington, also
appears to have spoken to Bruce Bank, the supervisor for the room service operation and
Beyene's direct supervisor, as part of the investigation into Beyene's complaints.  *See* Def.'s
Mot., Ex. F (Dep. of Bruce Bank (Aug. 9, 2010)) ("Bank Dep.") at 8.

[2]     The facts surrounding these "write-ups" are not clear.  One of them related to
Beyene taking sick leave.  Beyene First Dep. at 89–90; Def.'s Mot., Beyene Second Dep. at 99.
According to Beyene, he left a voicemail message for his supervisor that he was not well and not
coming to work, but he received a "write-up" anyway.  *See* Beyene First Dep. at 89–91.  The
other appears to relate to allegations that he provided a guest with free food.  *See* Pl.'s Statement
of Genuine Issues & Material Facts in Dispute ¶ 30.  Beyene additionally alleges that it was
standard practice for employees to receive counseling prior to a "write-up," but he was written
up without being counseled first.  Beyene Decl. ¶ 22.

percentage of gratuities than was given to other room service servers.  Beyene Decl. ¶ 22; Pl.'s

Opp'n, Beyene Second Dep. at 71–72.

**C.      Sunday Work Schedule**

After he was hired, Beyene informed Hilton that, pursuant to his religious beliefs, he had

to attend church on Sundays.  Beyene Decl. ¶ 8; Pl.'s Opp'n, Beyene Second Dep. at 39–40, 46;

*see also* Pl.'s Opp'n, Aklilu Dep. at 27–28.  He requested that Hilton not require him to work on

Sundays, *see* Beyene Decl. ¶ 8; Pl.'s Opp'n, Beyene Second Dep. at 155, and provided Hilton

with letters from the leader of his church asking that he be permitted to attend church on

Sundays.  Pl.'s Opp'n, Ex. 2 (Letters from Reverend Dr. Amare Kassaye, Head of the Church,

Ethiopian Orthodox Tewahido Religion Church).  According to Beyene, Hilton did not agree to

this request and permitted him to take Sundays off only by using his Voluntary Days Off,

thereby forcing him to forgo a paycheck for that day.  Beyene Decl. ¶ 9; Pl.'s Opp'n, Beyene

Second Dep. at 39–40.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a).  A material fact is one that "might affect the outcome of the suit

under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The

movant must support its factual positions by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . , admissions, interrogatory answers, or other materials."  FED. R. CIV. P.

56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets its burden, the non-moving party must then establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must show that "the evidence is such that a reasonable jury could return a verdict" in its favor. *Anderson*, 477 U.S. at 248. Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine dispute for trial. *See* FED. R. CIV. P. 56(c)(1), (e); *Celotex*, 477 U.S. at 322 n.3. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

## III.  ANALYSIS

### A.  Title VII Claims

Beyene's amended complaint does not identify discrete claims under Title VII; instead, it lumps all of his allegations regarding Title VII under the heading "Count One (Employment Discrimination)." *See* Am. Compl. at 1. The Court reads Beyene's amended complaint as asserting the following violations of Title VII: (1) religious discrimination related to Hilton's scheduling Beyene to work on Sundays, *id.* ¶ 7; (2) national origin discrimination based on Hilton's practice of paying Beyene a lower percentage of gratuities than other employees, *id.* ¶ 13; Beyene Decl. ¶ 22; (3) the creation of a hostile work environment based on Beyene's religion and/or national origin, Am. Compl. ¶ 11; and (4) retaliation, *id.* ¶¶ 5, 9–12. The Court will first address Beyene's scheduling and payment claims and then turn to Beyene's hostile work environment and retaliation claims.

1.      **Unexhausted Claims**

Under Title VII, a plaintiff must timely exhaust his administrative remedies before filing suit in federal court. *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010). To do so, a claimant must first file an administrative charge; only the claims contained in the charge or those that are "'like or reasonably related to the allegations of the charge'" can be raised in a Title VII lawsuit. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. USPS*, 665 F.2d 482, 491 (4th Cir. 1981)). "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Id.*

Hilton contends that Beyene has failed to exhaust his administrative remedies with regards to his scheduling and pay disparity claims. The Court agrees. Beyene's signed Equal Employment Opportunity Commission ("EEOC") Charge alleges that Beyene's co-workers and Hilton management harassed him following Beyene's report of his co-workers' allegedly suspicious behavior. *See* Def.'s Mot., Beyene Second Dep. Attach. ("EEOC Charge").[3] The

---

[3]      The full text of Beyene's statement in his EEOC Charge is as follows:

> I was hired by the Washington Hilton Tower in 1999 as a Food and Beverages Room Service Attendant. In May 2007, two men who work with me were constantly making comments in favor of terrorist organizations and denouncing Christianity and the West. At the White House Correspondents' Dinner, I reported the issue to a Secret Service agent, who told me to report it to management. Once I told management, they launched an investigation, but it was exposed to the two men that I had reported them. Management found no threat in their investigation. Since then, I have faced

Charge makes no mention of any scheduling or pay disparity concerns.[4]  Because Beyene's

scheduling and pay disparity claims are not at all related to the harassment alleged in his EEOC

Charge, the allegations in the Charge are not sufficient to administratively exhaust these claims.

*See, e.g.*, *Lyles v. District of Columbia*, 2011 WL 1428256, at *7–8 (D.D.C. April 14, 2011)

(finding that certain of the plaintiff's claims of retaliation were not reasonably related to the EEO

charge where the alleged adverse actions were not "mention[ed]" in the EEO charge and were

"distinct and separate" from the acts alleged in the charge).

Beyene does not contest this conclusion; instead, he asserts that he did in fact raise the

scheduling and pay disparity issues with an EEOC staff member when he filed his Charge, but

because there was no Amharic interpreter present,[5] he signed the Charge without knowing that

the EEOC staff member had not included those issues.  Pl.'s Opp'n at 17.  As evidence that he

informed the EEOC staff member of those issues, Beyene points to his own deposition

testimony:

> Q:   And you testified – earlier, you mentioned about religious discrimination
>        when you talked to the people at the EEOC.  Is that correct?
> A:    I have told her many things.

---

> constant threats by the two men as well as harassment by
> management.  Several employees have also told me that my report
> has caused management problems.  I have also been written up for
> taking sick leave.  I believe I have been retaliated against, in
> violation of Title VII of the Civil Rights Act of 1964, as amended.

EEOC Charge at 1.

[4]     In fact, in his second deposition, Beyene "agree[d]" that the Charge does not
mention his "scheduling issue."  Def.'s Mot., Beyene Second Dep. at 34.

[5]     Beyene's first language is Amharic.  Beyene Decl. ¶ 3.

Pl.'s Opp'n, Beyene Second Dep. at 155; *see also* Beyene Decl. ¶ 25 ("I informed the staff that interviewed me all the information about threats and harassment based on religion, national origin and also retaliation.").

Because "a plaintiff has an opportunity to review his charge prior to signing it, courts are reluctant to excuse exhaustion on the grounds that the EEOC investigator failed to include certain information in the charge." *Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008) (holding that the plaintiff had failed to exhaust despite the plaintiff's assertion that an EEOC investigator incorrectly told him that his claims of retaliation were included in his EEOC Charge). Beyene's testimony is far too vague to overcome this judicial reluctance.[6] His statement that "I have told her many things" is not sufficient to create a genuine dispute as to whether he complained to the EEOC staff member about being required to work on Sundays and/or his belief that he was paid a lower percentage of gratuities than other room service servers based on his national origin. *Cf.* Beyene First Dep. at 116 ("Q: Earlier on when you talked about filing the charge . . . all that stuff that's in there was related to this national security issue. That's why you were filing it, right? A: Yes.").

_____

[6] Some courts allow a plaintiff to present evidence — primarily the pre-charge questionnaire — that her claim was properly exhausted "[i]f the charge itself is deficient in recording her theory of the case due to the negligence of an agency representative who completes the charge form." *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002); *see also Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (noting evidence of agency error in refusing to dismiss the plaintiff's Title VII claims as not administratively exhausted). *But see Novitsky v. Am. Consulting Eng'rs, LLC*, 196 F.3d 699, 702 (7th Cir. 1999) (refusing to look beyond a signed EEOC charge where the plaintiff argued that the EEOC staff member omitted certain allegations when transferring allegations from the intake questionnaire onto the charge form). The Court need not decide here whether equitable considerations require it to look outside the formal EEOC charge where the failure to include certain allegations allegedly results from the negligence of an EEOC staff person. As discussed, Beyene has not presented any specific evidence that he told anyone at the EEOC about his scheduling or pay disparity issues.

Furthermore, Beyene's EEOC Intake Questionnaire undercuts Beyene's contention that he complained of these scheduling and pay disparity issues to the EEOC.  The Questionnaire, which appears to have been filled out by Beyene, contains no allegations related to these concerns.  To the contrary, he writes only "I was harrassed [sic] because I report very important information to police.  It was about national security."  Def.'s Reply, Ex. G (Decl. of Matthew Neiman (Dec. 6, 2010)), Attach. at 2 ("EEOC Intake Questionnaire").

There is no other evidence in the record that supports Beyene's contention that he informed the EEOC of his complaints regarding his Sunday work schedule and alleged pay disparity.  Accordingly, the Court concludes that Beyene failed to exhaust his administrative remedies with respect to these claims.  Therefore, Hilton's motion for summary judgment as to these claims is granted..

### 2.      Hostile Work Environment

Beyene next asserts that he was subjected to a hostile work environment in violation of Title VII by (1) Hilton management's "leaking" of Beyene's report to the Secret Service to Chowdhury and Salah; (2) their subsequent harassment of him; (3) and Hilton's alleged failure to stop this harassment.  Hilton argues that Beyene cannot succeed on this claim as a matter of law because he cannot prove that the conduct of which he complains was based on his membership in a protected class.  *See Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) ("[H]ostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class.").  Hlton's position has merit.  Although Beyene now asserts

that the harassment he suffered was the result of his religion or national origin, the record belies

this assertion.

Beyene repeatedly testified that Chowdhury and Salah harassed him only because he

reported his national security concerns about them to law enforcement authorities:

> Q:     So your concern is for national security?
> A:     (In English.)  That's all I think.
> Q:     And all of your reports were related to national security?
> A:     (By Interpreter.)  Hundred percent.  All this happened to me because
>        . . . of my concern for national security.
> Q:     Okay. So you made complaints to protect national security?
> A:     (The witness nods.)
> Q:     And then you feel you were retaliated against because of your reports
>        for national security?
> A:     (By Interpreter.)  Yeah, because of my report to national security to
>        the hotel and the hotel gave this information to them, I think I believe
>        that that's why this happened to me.
> Q:     So the reason for — the reason you believe that Mr. Chowdery [sic]
>        and Mr. Saleh [sic] were doing things to you is because of your reports
>        regarding national security?
> (The witness responds directly in English as follows:)
> A:     Yes, sir.
> Q:     Is there any other reason?
> A:     No.
> Q:     That's it?
> A:     Yeah.

Beyene First Dep. at 54–56.[7]  Similarly, in both his EEOC Charge and EEOC Intake

Questionnaire, he asserted that his report that Chowdhury and Salah posed a potential national

security threat was the cause of their harassment.[8]  Accordingly, the record makes clear that the

alleged harassment by Chowdhury and Salah's arose from their displeasure at Beyene's report

about their allegedly suspicious behavior and not from any discriminatory animus based on

Beyene's religion or national origin.[9]

Nevertheless, Beyene argues that his hostile work environment claim is "not about

'national security.'"  Pl.'s Opp'n at 13.  Instead, he states that he lodged two complaints about

Chowdhury and Salah: one to law enforcement agencies and the Hilton Security Director based

---

[7]      In the same deposition, Beyene also testified:

Q:    So all of [Mr. Salah's] comments to you at work, all the things
       he did that you thought were hostile were related to your
       reports?
A:    (The witness nods.)
Q:    Concerning national security?
A:    Yes, sir.  Hundred percent.
. . .
Q:    And all of [Mr. Chowdhury's] harassment is because of your
       national security threats?
A:    Yes.  Yes.

Beyene First Dep. at 76, 77.

[8]      Beyene also submits an undated letter that purports to be a letter to Hilton's "EOE
representative."  Pl.'s Opp'n, Ex. 1 (Letter from Mesafint Beyene).  It is unclear whether and to
whom it was sent, but it professes to "recap the history" of his case.  In it, Beyene nowhere
mentions or suggests that any of the harassment he experienced was connected to his religion or
national origin.  Instead, he indicates that his two co-workers began harassing him because he
had reported them as a potential national security threat, and expresses his concern about
Hilton's "reckless[ness]" in handling his security report.  Id. at 1–2.

[9]      Similarly, there is an utter dearth of evidence that any of the actions attributed to
Hilton had any link whatsoever to Beyene's religion or national origin.

on his perception that they posed a national security threat, and a second, "subsequent complaint . . . to his supervisor, managers, and the Human Resource (HR) [sic] . . . based on threats and harassment when the co-workers found out that the Plaintiff was not a Muslim like them." Pl.'s Opp'n at 13. As support, he cites his declaration, in which he states that his co-workers' harassment of him was because, in addition to his national security report about them, "[he] was not Muslim." *See* Beyene Decl. ¶¶ 16–18; *see also id.* ¶ 16 (stating that the co-workers "threatened to cut my throat since I am a Christian").

The assertion that Chowdhury and Salah's harassment was related to Beyene's religion finds no corroboration in the record outside of Beyene's declaration.[10] Moreover, such a connection is contradicted by Beyene's sworn deposition testimony, cited above, attributing their harassment solely to his national security report about them. Beyene "cannot create or resurrect a genuine issue of material fact and thereby defeat summary judgment by filing a self-serving affidavit that contradicts previous sworn testimony." *Thompson v. Islam*, 2005 WL 3262926, at *3 (D.D.C. July 29, 2005); *see also Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) (recognizing the principle that a party "may not create a material issue of

---

[10]     The only other suggestion in the record that Chowdhury and Salah harassed Beyene because of his religion appears in the deposition testimony of Bruce Bank, the supervisor for the room service operation and Beyene's direct supervisor. Bank testified that Chowdhury and Salah "used to harass [Beyene and me] when we read the Bible." Pl.'s Opp'n, Ex. 5 (Dep. of Bruce Bank (Aug. 9, 2010)) ("Bank Dep.") at 15. Given Beyene's emphatic deposition testimony that he was harassed solely because of his report of Chowdhury and Salah's suspicious behavior, the Court finds that Bank's single statement is not enough to create a genuine dispute of fact as to whether the alleged harassment was based on Beyene's religion. *Cf. Nichols v. Truscott*, 424 F. Supp. 2d 124, 140 (D.D.C. 2006) (granting summary judgment to the defendant on a hostile work environment claim where "[o]nly a handful of the comments . . . by [the] plaintiff's co-workers could have been even remotely linked to [the] plaintiff's membership in a protected class").

fact simply by contradicting its prior sworn testimony"); *Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) ("Self-serving testimony does not create genuine issues of material fact.").  Instead, "[t]he prior sworn statement will receive controlling weight unless the shifting party can offer persuasive reasons for believing the supposed correction."  *Pyramid Sec. Ltd.*, 924 F.2d at 1123.  Beyene has offered no reason why the statements in his recent declaration should be credited over his sworn deposition testimony.  Accordingly, the Court will not consider the portions of Beyene's declaration that contradict his prior testimony, and will grant the motion for summary judgment on Beyene's hostile work environment claim.  *Id.*[11]

### 3.    Retaliation

Beyene asserts that he suffered various retaliatory actions,[12] including Chowdhury's and Salah's harassment of him and Hilton's giving him an unjustified "write-up" for taking sick

---

[11]     Beyene also offers an "errata" sheet dated November 22, 2010 to modify his testimony in his second deposition (taken on September 28, 2010).  *See* Pl.'s Opp'n, Errata Addendum to Ex. 7, ECF No. 28-9.  In his second deposition, the following exchange occurred:

> Q:    All of your complaints about Mr. Salah and Mr. Chowdhury were
>        related to your concerns about national security?
> A:    Correct.

Def.'s Mot., Beyene Second Dep. at 57.  On the errata sheet, Beyene attempts to change his answer to: "All complaints I made to FBI, Secret Service and Hotel's security director prior to the threats and harassment from Chowdhury and Salah was [sic] about national security."  He offers no reason for this change.  Even if the Court were to accept the change, there would still be insufficient evidence that Chowdhury and Salah's treatment of Beyene was because of his religion or national origin.

[12]     It is not entirely clear which allegedly adverse actions Beyene asserts were retaliatory.  It is unnecessary to identify them precisely, however, given the Court's holding, *infra*, that Beyene has failed to show that he engaged in statutorily protected activity.

leave.[13]  Hilton argues that Beyene's retaliation claim must fail because he cannot show that he engaged in activity protected by Title VII.  Hilton's argument has merit.

Title VII makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  Title VII retaliation claims are assessed pursuant to the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  "Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).[14]  Here, Beyene cannot show that he engaged in protected activity.

"An activity is 'protected' for the purposes of a retaliation claim 'if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the

---

[13]     Beyene also claims that Hilton's alleged manipulation of Beyene's gratuity pay and refusal to give him Sundays off from work were retaliatory actions.  As discussed above, however, Beyene failed to exhaust these complaints and, accordingly, may not base any Title VII claims on them.

[14]     The D.C. Circuit has explained that "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision," the district court should set aside the *McDonnell Douglas* burden-shifting framework and move directly to the ultimate issue of discrimination.  *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  Here, however, Hilton has not asserted a legitimate, non-discriminatory reason and, instead, disputes that Beyene has engaged in protected activity; thus, the *McDonnell Douglas* structure still governs.

alleged treatment.'"  *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91–92 (D.D.C.

2006) (quoting *Coleman v. Potomac Elec. Power Co.*, 422 F. Supp. 2d 209, 212–13 (D.D.C.

2006)); *see also* 42 U.S.C. § 2000e-3(a).  Thus, not every complaint entitles its author to

protection from retaliation under Title VII.  *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C.

Cir. 2006).  "'While no 'magic words' are required, the complaint must in some way allege

unlawful discrimination,'—that is, discrimination on the basis of a protected characteristic."

*Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 89 (D.D.C. 2010) (quoting *Broderick*, 437

F.3d at 1232).  Therefore, Beyene must demonstrate that he complained of some unlawful

discrimination based on his membership in a protected class.  He has not done so.

Beyene argues that his complaint to Hilton about Chowdhury and Salah's harassment,

which occurred at some point subsequent to his report that they potentially posed a national

security threat, constitutes protected activity.  There is no evidence, however, that this complaint

referred to his religion or national origin.  Patricia Buckley, who was the Assistant Director of

Human Resources at the Hilton Washington at the time, initiated the investigation of Beyene's

complaints of Chowdhury and Salah's alleged conduct.  Buckley Decl. ¶¶ 3, 7.  Prior to her

transfer to a different Hilton location in late July 2007, Buckley emailed a summary of her

investigation.  *Id.* ¶ 10.  Her summary shows that Beyene claimed that he had reported

Chowdhury and Salah's suspicious behavior to law enforcement agencies and they subsequently

confronted and threatened him.  *Id.*, Attach. at 1 (Email, Patricia Buckley to Peter Hill (July 11,

2007)).  The summary includes no mention that Beyene made any reference to Chowdhury and

Salah's behavior being related to Beyene's religion or national origin.

Furthermore, Beyene's deposition testimony indicates that he himself believed that he was retaliated against because of his initial national security report, not because of his membership in a protected class.  Regarding his allegedly unjustified "write-up" from Hilton, he testified:

> Q:   But you feel that [Hilton management] [does not] like you because of the
>       complaints that you have made about national security?
> A:   Yes.
> Q:   And that's the only reason?
> A:   (The witness nods.).
> Q:   Is that yes?
> A:   That's what I believe.
> Q:   Okay.  And that's the only reason?
> A:   Yeah.

Beyene First Dep. at 91–92; *see also id.* at 116 ("Q: So it's all — but it's all retaliation stemming back to your national security complaints?  A: Yes.").  He also testified that he believed that Chowdhury and Salah harassed him because of the national security report.  *See* Beyene First Dep. at 55 ("Q: And then you feel you were retaliated against because of your reports for national security? A: Yeah, because of my report to national security to the hotel and the hotel gave this information to them, I think I believe that that's why this happened to me.").

Beyene has put forward no evidence that his complaint to Hilton management alleged unlawful discrimination based on his membership in a protected class.  Accordingly, Beyene has not established that he engaged in statutorily protected activity.  *See, e.g.*, *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 14 (D.D.C. 2008) (finding that the plaintiff had not alleged that she engaged in protected activity where she complained about her "insubordinate office assistant" and the "effects of nepotism" but not any "discriminatory actions"); *Lemmons*, 431 F. Supp. 2d at 92–93 (holding that the plaintiff had not demonstrated that she participated in

16

a protected activity where she complained of harassment by her supervisor but the "complaint allege[d] harassment generally and generically . . . and [did] not refer to harassment or discrimination based on race or any other protected category"); *Logan v. Dep't of Veterans Affairs*, 404 F. Supp. 2d 72, 77 (D.D.C. 2005) (determining that the plaintiff's letter regarding management practices and the plaintiff's grievance regarding medical care did not constitute protected activity under Title VII "because they [did] not include a claim of discrimination based upon race, color, religion, sex or national origin"). The Court, therefore, must grant Hilton's motion for summary judgment on Beyene's retaliation claims.

## B.    Intentional Infliction of Emotional Distress

Beyene bases his intentional infliction of emotional distress ("IIED") claim on: (1) Hilton management's "writing him up with no good reason and [] preventing him from attending church on Sundays"; (2) Chowdhury and Salah's alleged threats and harassment; and (3) Hilton management's failure "to do anything" in response to Beyene's complaints. Am. Compl. ¶¶ 17–18. Hilton argues that summary judgment must be granted in its favor because this alleged conduct does not rise to the level of outrageousness necessary to support an IIED claim; and, in any event, no liability should attach based on Chowdhury and Salah's conduct because they were acting outside the scope of their employment when they threatened and harassed Beyene. The Court will first address whether either Hilton's conduct or that of Chowdhury and Salah is outrageous enough to make out an IIED claim. Because the Court finds that Chowdhury and Salah's conduct is sufficiently outrageous, the Court then turns to the scope of employment issue.

### 1.    Outrageousness of Conduct at Issue

17

A party claiming IIED must show: "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Halcomb v. Woods*, 610 F. Supp. 2d 77, 80 (D.D.C. 2009) (alteration in original) (citing *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)).[15] "To establish the required degree of outrageousness [to sustain an IIED claim], the plaintiff must allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997) (internal citations and quotation marks omitted). This "very demanding standard" is "only infrequently met." *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997). "Especially in the employment context, the standard is exacting." *Evans v. District of Columbia*, 391 F. Supp. 2d 160, 170 (D.D.C. 2005); *see also Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211–12 (D.C. 1997) ("[G]enerally, employer-employee conflicts do not rise to the level of outrageous conduct.").

As a matter of law, Hilton's conduct in giving Beyene allegedly unjustified "write-ups" and scheduling Beyene to work on Sundays does not rise to the level of "extreme and outrageous conduct."[16] Courts have routinely held that much more extreme behavior fails to make out an

---

[15]    Because both parties assume that District of Columbia law would govern Beyene's tort claims, and that assumption appears to be consistent with the District of Columbia's choice of law rules, the Court will do likewise. *See Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009) (where all parties assume that D.C. law applies, "[t]he Court need not and does not question the parties' assumptions on that point").

[16]    Beyene also argues that Hilton's failure to respond adequately to Chowdhury and Salah's harassment supports his IIED claim. The record demonstrates that Hilton undertook an investigation into Beyene's complaints about Chowdhury and Salah, including conducting, at least, five interviews. Aklilu Decl. ¶¶ 3–5; Beyene Second Dep. at 87; Buckley Decl. ¶¶ 7–9; Buckley Dep. at 13–14. Beyene disputes the adequacy of the investigation. Even if Hilton's

IIED claim in the employment context.  *See, e.g.*, *Grandison v. Wackenhut Servs., Inc.*, 514 F. Supp. 2d 12, 14, 17–18 (D.D.C. 2007) (finding that allegations of harassment by supervisor and coworkers, including, inter alia, "intentionally interfering with [the plaintiff's] right to leave work, being sent home without pay for trumped up reasons . . . , unfounded threats of discipline, lies concerning [the plaintiff] being argumentative or verbal with his supervisor," and physical assault by a former supervisor, did not make out an IIED claim); *Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997) (affirming that allegations that employee "was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge" failed to state an IIED claim); *Duncan*, 702 A.2d at 211–12 (holding that, as a matter of law, conduct was not sufficiently outrageous to establish an IIED claim where the plaintiff alleged that her employer forced her to choose, while pregnant, between continuing work in a position that exposed her fetus to radiation or losing her job).

 Beyene's argument that Chowdhury and Salah's harassment constitutes extreme and outrageous conduct is more compelling.  According to Beyene, Chowdhury and Salah repeatedly harassed him and threatened his life over a three year period, causing him grave distress.  Beyene Decl. ¶¶ 10, 14; Def.'s Mot., Beyene Second Dep. at 118.  They threatened "to cause [him] serious bodily harm by cutting [his] throat" and to "ship [his] head to Africa."  Beyene Decl. ¶ 14; *see also* Pl.'s Opp'n, Bank Dep. at 6–7 (recounting that Beyene had told him that Chowdhury and Salah "said they were going to kill [Beyene]" and "cut his neck off"); Beyene First Dep. at

---

investigation was insufficient, however, the Court does not believe that a reasonable juror could find Hilton's failure to be more thorough in its investigation to be so outrageous as to give rise to an IIED claim, especially in the employment context.

76 (stating that Chowdhury had made "more than [one] hundred" threats to him between May 2007 and July 2009).

The ultimate question in an IIED case is whether "the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).   Viewing the evidence in the light most favorable to Beyene and making no credibility determinations, the Court concludes that a reasonable jury could find that Beyene's assertions of repeated and sustained threats of physical violence and death from Chowdhury and Salah meet this standard.  *See Sampson v. Wash. Metro. Area Transit Auth.*, 477 F. Supp. 2d 223, 226–27 (D.D.C. 2007) (denying summary judgment where the plaintiff alleged multiple "threats of [physical] violence and intimidation in a unionized workshop employment setting"); *Homan*, 711 A. 2d at 818 (upholding the jury verdict in favor of the plaintiff, and reversing the trial judge's judgment not withstanding the verdict in favor of the defendant, on an IIED claim where the defendant gave the plaintiff's home address to a third person who the defendant should have expected would repeatedly harass and even threaten the plaintiff's life); *cf. Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984) ("Repeated harassment may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability." (internal quotation and internal alteration omitted)). Accordingly, the Court finds that the evidence of Chowdhury and Salah's conduct is outrageous enough to make out an IIED claim at this stage of the litigation.

      **2.**      **Scope of Employment**

Beyene, however, has not sued Chowdhury and Salah.  Instead, he has named only Hilton as a defendant in this lawsuit.  Hilton contends that even if Chowdhury and Salah's conduct was outrageous, it should not be held liable because Chowdhury and Salah were acting outside the scope of their employment.  The Court agrees.

In the District of Columbia, employers may be held vicariously liable for acts of their employees that are committed within the scope of employment.  *See Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979).  District of Columbia courts look to the Restatement to determine which acts fall within that scope.  *See Schecter v. Merchs. Home Delivery, Inc*., 892 A.2d 415, 427–28 (D.C. 2006). The Restatement provides:

> Conduct of a servant is within the scope of employment, if but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958).  The party asserting the employer-employee relationship has the burden of proving it.  *District of Columbia v. Hampton*, 666 A.2d 30, 38 (D.C. 1995).  Beyene has failed to establish, at least, that Chowdhury and Salah's conduct satisfies the third prong of the Restatement test.

Under District of Columbia law, "the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable.  The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends." *Schecter*, 892 A.2d at 427 (internal citation and emphasis omitted).  "The key inquiry is the employee's intent at the moment the tort occurred." *Majano v. United States*, 469 F.3d 138, 142 (D.C. Cir. 2006); *see also M.J. Uline Co. v. Cashdan*, 171 F.2d

132, 134 (D.C. Cir. 1949) (noting that tortious conduct would be outside the scope of

employment if, "when [the tortfeasor] struck the blow, [he was] completely indifferent to the

work he was employed to do and actuated only by anger or hostility toward the man he tried to

injure").

Here, there is no evidence that Chowdhury and Salah were motivated in any part by a

desire to advance the interests of Hilton when they threatened and harassed Beyene.  To the

contrary, they appear to have acted "solely for the accomplishment of [their] independent,

malicious, mischievous and selfish purposes."  *Boykin v. District of Columbia*, 484 A.2d 560,

562 (D.C. 1984).[17]  Consequently, although Chowdhury and Salah may have acted reprehensibly,

Beyene has failed to demonstrate that Hilton may be held liable for their torts.  Accordingly, the

Court must grant Hilton's motion for summary judgment as to Beyene's IIED claim.

## C.      Negligence Claims

Beyene also brings claims for negligent hiring and negligent retention.  These negligence

torts recognize that an employer owes duties to third persons "to use reasonable care to select

employees competent and fit for the work assigned to them and to refrain from retaining the

---

[17]      The D.C. Court of Appeals has stated that "the intent criterion focuses on the
underlying dispute or controversy, not on the nature of the tort, and it is broad enough to
embrace any intentional tort arising out of a dispute that was originally undertaken on the
employer's behalf."  *Weinberg v. Johnson*, 518 A.2d 985, 992 (D.C. 1986) (internal quotation
marks and citation omitted); *see also Lyon v. Carey*, 533 F.2d 649, 655 (D.C. Cir. 1976) (holding
if a tort "was triggered off or motivated or occasioned by a dispute over the conduct then and
there of the employer's business, then the employer should be liable").  Arguably, the triggering
event at issue here — Beyene's report that of his co-workers's suspicious behavior — could
have been taken, in part, on Hilton's behalf.  But the broad emphasis on the underlying
controversy does not eviscerate the legal test's focus on the tortfeasor's, and not the victim's,
intent.  *See* RESTATEMENT (SECOND) OF AGENCY § 228.  Consequently, whether Beyene was
acting to further Hilton's interests when reporting Chowdhury and Salah's suspicious behavior is
irrelevant to the Court's analysis.

services of an unfit employee." *See Fleming v. Bronfin*, 80 A.2d 915, 917 (D.C. 1951).  Where the employer breaches this duty, causing an injury to a third party, "the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment." *Id.*

### 1.  Negligent Hiring

Beyene's negligent hiring claim is based on his assertion that Chowdhury was "fir[ed] and rehir[ed]" after Beyene had complained of his (and Salah's) harassing conduct.  Pl.'s Opp'n at 20.  According to Beyene, Hilton's rehiring of Chowdhury amounted to negligent hiring.  *Id.* Hilton responds by offering the declaration of the Director of Human Resources at the Hilton Washington, which states that Chowdhury has remained continuously employed by Hilton since the time of Beyene's first complaints.  Buckley Decl. ¶ 13.  Based on this declaration, Hilton argues that the premise for Beyene's negligent hiring claim is inaccurate.  The Court agrees.

The only support in the record for Beyene's contention that Chowdhury was fired and rehired are inadmissible statements by Beyene himself.  In his second deposition, Beyene stated that Bruce Banks and the CEO of his union told him that Chowdhury had been fired and then reinstated.  Def.'s Reply, Beyene Second Dep. at 114–15.  These statements are inadmissible, however, because, at the summary judgment stage, the nonmovant's evidence "must be capable of being converted into admissible evidence" at trial.  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000); *see also* FED. R. CIV. P. 56(c)(2).  Here, Beyene's evidence about Chowdhury's rehiring is hearsay; he would not be permitted to testify about those conversations at trial.  *See Gleklen*, 199 F.3d at 1369 (citing FED. R. EVID. 801–807) (holding that portions of a deposition transcript that amounted to "sheer hearsay" could not be

considered on a motion for summary judgment); *see also* 10A CHARLES ALAN WRIGHT ET AL.,

FEDERAL PRACTICE AND PROCEDURE § 2722 (3d ed.) ("Only that portion of a deposition that

would be admissible in evidence at trial may be introduced on a summary-judgment motion . . .

."). Accordingly, the Court will not consider Beyene's statements about his conversations

regarding Chowdhury's alleged rehiring.[18]

Thus, Beyene has not presented the Court with any admissible evidence to dispute the

declaration from Buckley, as the Director of Human Resources at the Hilton Washington, that

Hilton hired Chowdhury before Beyene came to work at the hotel and kept him in the continuous

employ of the hotel throughout the relevant time period. Buckley Decl. ¶ 13. Therefore,

because the record fails to establish that Hilton rehired Chowdhury after Beyene complained of

Chowdhury's conduct, the Court grants summary judgment for Hilton on Beyene's negligent

hiring claim.

### 2.      Negligent Retention

To establish a claim for negligent retention, a plaintiff must show "that the employer

breached a duty to plaintiff to use reasonable care in the . . . retention of an employee which

proximately caused harm to plaintiff." *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940

(D.C. 2002). This theory of liability requires that "an employer knew or should have known its

employee behaved in a dangerous or otherwise incompetent manner, and that the employer,

---

[18]      Beyene also states in his declaration that "after I reported the harassment and
threats to the Defendant, the Defendant fired Jaman Chowdhury and rehired him after three
days." Beyene Decl. ¶ 28. This statement is hearsay. Rule 56(c) states that declarations "used to
support or oppose a motion [for summary judgment] must be made on personal knowledge."
FED. R. CIV. P. 56(c)(4). Beyene gives no basis for the Court to conclude that he possesses
personal knowledge about Chowdhury's employment status with Hilton.

armed with that actual or constructive knowledge, failed to adequately supervise the employee."
*Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)).[19]

   Beyene argues that Hilton was negligent in retaining Chowdhury and Salah after he informed Hilton of their harassing and threatening behavior.[20]  Hilton responds that it investigated all of Beyene's complaints but could not corroborate them.  Thus, Hilton asserts that there is no evidence of any inappropriate conduct that would have put Hilton on notice that Chowdhury or Salah posed any risk of harm to Beyene or other employees.[21]  Beyene contends that Hilton's investigation was inadequate, *see* Beyene Decl. ¶¶ 11, 13, and that, had it been conducted properly, Hilton "would have known that the two co-workers had [the] propensity to harass the Plaintiff at [the] workplace."  Pl.'s Opp'n at 21.  Beyene has the stronger argument.

_____

[19]   Although *Giles* and *Brown* are negligent supervision cases, the same standard has been applied to negligent retention claims.  *See, e.g.*, *Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 50–52 (D.D.C. 2003).

[20]   He also points to the testimony of Bank as evidence that Hilton had knowledge or constructive knowledge that Chowdhury and Salah harassed employees.  *See* Def.'s Mot., Bank Dep. at 8–9 (reporting that he "had problems with both [Chowdhury and Salah] before").

[21]   Hilton also argues that because Chowdhury and Salah's harassment is the basis for both his negligent hiring and retention claims as well as his Title VII claims, his negligence claims must fail.  Def.'s Mot. at 21–22.  To make this argument, Hilton relies on case law stating that negligence claims such as negligent supervision or retention must "be predicated only on common law causes of action or duties otherwise imposed by the common law," and not statutory violations.  *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007).  Hilton misunderstands the law.  *Griffin* held that employers could only be held liable for negligent supervision based on breaches of common law duties or torts, and not for breaches of duties created only by statute.  *Id.* at 576–77.  Accordingly, the defendant in *Griffin* could not be held liable for negligently supervising an employee who sexually harassed another employee because there was no duty at common law to prevent sexual harassment of employees.  *Id.*  If, however, an employee's conduct forms the basis for a statutory claim and is also actionable at common law, the plaintiff may bring both a statutory claim and a negligent supervision claim.  *See id.*

While Hilton claims that it conducted a reasonable investigation of Beyene's complaints about Chowdhury and Salah, this is a question of fact.  As part of its investigation, Hilton interviewed Beyene, Chowdhury, Salah, potential witnesses Hassan Boudieh and Omar Farouk, and, at least informally, Banks.  Def.'s Mot., Aklilu Dep. at 11; Def.'s Mot., Bank Dep. at 8; Def.'s Mot., Beyene Second Dep. at 87; Buckley Dep. at 13–14.  There is no evidence, however, that Hilton interviewed additional witnesses whom Beyene had identified as observing some of the harassment.  According to Beyene's deposition testimony, "the Spanish workers at housekeeping" saw Chowdhury and Salah harass him, and he informed Hilton's security director of that fact.  Pl.'s Opp'n, Beyene Second Dep. at 120.  A reasonable juror could find that Hilton should have interviewed all identified witnesses, and, if it had done so, it would have discovered the veracity of Beyene's allegations.[22]  Thus, for purposes of Beyene's negligent retention claim, the Court finds that Beyene has presented sufficient evidence to create a genuine dispute as to whether Hilton should have known that Chowdhury and Salah had behaved dangerously toward Beyene.  Consequently, Hilton's motion for summary judgment Beyene's  negligent retention claim is denied.

**D.**     **Invasion of Privacy**

---

[22]     Beyene also emailed Peter Hill requesting a meeting and stating, "I came to your office three times to discuss the harassment I am receiving from Mr. [Chowdhury].  I am scared as he has threatened me by saying that I have only three days to receive the injection ????."  Pl.'s Opp'n, Ex. 4 (Email from Mesafint Beyene to Peter Hill).  Beyene contends that Hill never responded to him.  It is unclear when this email was sent and whether Hilton had already begun its investigation into Chowdhury and Salah's conduct, but the Court believes that a reasonable juror could find the failure to respond to an employee's report of threatening behavior to be negligent.

Lastly, Beyene brings a claim for unreasonable invasion of privacy based on Hilton's alleged disclosure of private facts about Beyene's medical treatment.  Specifically, Beyene alleges that Hilton publicized to his co-workers that he received injections from a particular doctor.  Am. Compl. ¶¶ 38, 41.  As support for his claim, Beyene notes that Hilton maintains a medical file on him, Pl.'s Opp'n, Ex. 9 (Responses to Pl.'s Interrogs. to the Def.) at 2, and states that his co-workers discussed his confidential medical information in a public area.  Beyene Decl. ¶ 20.  He suggests that the co-workers could only have learned of his medical treatment from Hilton.  Hilton responds that Beyene is unable to make out a successful claim for invasion of privacy because even if Hilton knew about Beyene's medical treatment and disclosed it to his co-workers — an allegation that it disputes[23] — such a disclosure is insufficient to establish the tort.  Hilton's argument has merit.

To establish an invasion of privacy claim, a plaintiff must demonstrate "publicity [given] to a matter concerning [her] private life . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." RESTATEMENT (SECOND) OF TORTS § 652D.[24]  As a matter of law, "it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."  *Id.* § 652D cmt. a.  Instead, to establish the tort, the private facts at issue must be "made public, by communicating [them] to the public at large, or to

---

[23]     Hilton points out that Beyene has admitted that he never informed Hilton that he received injections.  *See* Def.'s Mot., Beyene's Second Dep. at 134 (stating that he "never" gave information to the hotel about his injections).

[24]     The District of Columbia courts have adopted the Second Restatement of Torts's definition of invasion of privacy.  *See, e.g.*, *Vassiliades v. Garfinckel's, Brooks Brothers, Miller & Rhoades, Inc.,* 492 A.2d 580, 587 (D.C. 1985).

so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.*; *see also Steinbuch v. Cutler*, 463 F. Supp. 2d 1, 3 (D.D.C. 2006).

Beyene asserts that Hilton disclosed his medical information to Chowdhury, Salah, and perhaps a third unidentified individual. *See* Beyene Decl. ¶ 20; *see also* Am. Compl. ¶¶ 38–39. Therefore, even if this disclosure occurred, the information was only communicated to a small group of persons. As a result, Beyene cannot demonstrate that Hilton gave "publicity" to his private information in the manner required to establish the tort. Accordingly, Beyene's claim for invasion of privacy cannot survive summary judgment.

## IV. CONCLUSION

For the foregoing reasons, it is this 30th day of September, 2011 hereby

**ORDERED** that Hilton's Motion for Summary Judgment [#25] is **GRANTED** as to Counts One, Two, and Four of Beyene's Amended Complaint; and it is further

**ORDERED** that Hilton's Motion for Summary Judgment [#25] is **GRANTED** as to Count Three insofar as Count Three asserts a claim for negligent hiring; and  it is further

**ORDERED** that Hilton's Motion for Summary Judgment [#25] is **DENIED** as to Count Three insofar as Count Three asserts a claim for negligent retention.

Henry H. Kennedy, Jr.
United States District Judge

28