**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**MESAFINT BEYENE,**

        **Plaintiff,**

       **v.**

**HILTON HOTELS CORPORATION,**

        **Defendant.**

---

**Civil Action No. 08-1972 (BJR)**

**MEMORANDUM OPINION ON MOTION FOR JUDGMENT AS A MATTER OF LAW**

---

This matter is before the Court on a motion for judgment as a matter of law filed by

Defendant Hilton Hotels Corporation (hereinafter "Hilton").  *See* Dkt. #73 (hereinafter "Mot.).

Defendant owns and operates the Washington Hilton in Washington, D.C., where Plaintiff,

Mesafint Beyene, has been a room service waiter since 1999.  *See* Joint Pretrial Statement (Dkt.

#54) at 2.  This case was tried before a jury from November 26, 2012 to November 28, 2012.

*See* Nov. 26-Nov. 28, 2012 Minute Entries.  Plaintiff's sole claim at trial was one for negligent

retention, as Plaintiff alleged that Defendant was negligent in retaining two co-workers whom

Plaintiff claimed were assaulting him.  Joint Pretrial Statement at 2.  The jury was unable to

reach a consensus, and on November 29, 2013, the jurors were excused without a verdict being

rendered.  *See* Nov. 29, 2013 Minute Entry.  In its motion, Defendant contends that Plaintiff was

unable to establish the required elements of a claim for negligent retention, and that Defendant is

entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50.  *See* Mot. at 1.

Having considered the pleadings herein, and having heard the testimony of the witnesses, the

Court finds and rules as follows:

## I.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," then a court may "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a)(1)(B).  "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b).  If the moving party renews its motion for judgment as a matter of law following the discharge of the jury, the court may consider the motion and, if appropriate, direct the entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b)(3).

The legal standard for granting a renewed motion for judgment as a matter of law is the same whether it is rendered during the trial, under Rule 50(a), or after the jury has been discharged, under Rule 50(b).  *See Rice v. District of Columbia*, 818 F. Supp. 2d 47, 54 (D.D.C. 2011).  That is, "a court should render judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)).  As a post-trial Rule 50(b) motion is limited to a renewal of a Rule 50(a) motion for judgment as a matter of law, the post-trial motion must be limited to those grounds that were specifically raised in the prior Rule 50(a) motion.  *Id.* at 54-55.

The standard for a Rule 50 motion is similar to the summary judgment standard under Rule 56.  *Id.*  Like summary judgment, a court considering a motion for judgment as a matter of

law "must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence." *Id.* The evidence supporting the nonmoving party's position, however, "must be more than merely colorable; it must be significantly probative." *See Williams v. Johnson*, 870 F. Supp. 2d 158, 162 (D.D.C. 2012) (internal citations omitted).

## II. BACKGROUND

### A. Factual Background

Plaintiff began working for Defendant in 1999 at the Washington Hilton Hotel in Washington, D.C. Joint Pretrial Statement at 3. Plaintiff works as a server in the room service department of the Washington Hilton. *Id.* at 4. Plaintiffs' allegations stem from interactions with two of his former co-workers, Jaman Chowdhury and Yazan Saleh. Chowdhury worked at the Washington Hilton from 1983 until January 2012. *Id.* at 3-4. Saleh worked at the Washington Hilton from August 2005 until November 2008. *Id.* at 3.

Each year, the Washington Hilton hosts the White House Correspondents' Dinner, and Plaintiff usually works as a server for the event. Day 1 Tr. (Dkt. #76) 158:18-19. In April or May 2007, shortly before that year's Correspondents' Dinner, Plaintiff allegedly overheard Chowdhury and Saleh discussing their interest in assassinating the President. Day 1 Tr. 159:24-160:3; 161:19-21. Plaintiff reported his co-workers to the Secret Service, the FBI, and Hilton management. *See, e.g.*, Day 1 Tr. 90:10-15; 93:17-94:4; 159:4-5; 161:19-21. The FBI investigated the report, but was unable to substantiate any threat. *See* Day 2 Tr. (Dkt. #77) 335:12-17.

According to Plaintiff, Chowdhury and Saleh learned of the investigation and suspected that Plaintiff was responsible for the report. *See* Day 1 Tr. 163:8-20; Day 2 Tr. 235:9-12.

Plaintiff testified that the two approached him at work and threatened his life, stating that they would "cut his throat" and send him back to his country.[1]  Day 1 Tr. 163:8-20.  Plaintiff reported this threat to Bruce Banks, his immediate supervisor.  Day 1 Tr. 164:3-20.  Banks then contacted Evert Ramos, Plaintiff's second level supervisor, who in turn contacted Atlabachew Akilu, Hilton's Assistant Director of Food and Beverage.  Day 1 Tr. 164:17-25; 166:3-8.  Akilu contacted Hilton's Human Resources and Security Department.  Day 1 Tr. 166:17-18.  Patricia Buckley, Hilton's Assistant Director of Human Resources, initiated an investigation.  Day 1 Tr. 167:3-22.[2]

        At trial, Buckley testified that, at the time, Plaintiff identified two witnesses to the threats against him, Hassan Boudieh and Omar Farouk.  Tr. 94:24-25; 184:21-22.  Boudieh testified at trial that he was contacted by Buckley at the time of the alleged incident following the Correspondents' Dinner, and stated that he told her that he had not witnessed any threats against Plaintiff.  Day 2 Tr. 243:20-24; 244:9-19.  Farouk testified at trial that he was contacted by Ramos at the time of the alleged incident, and stated that he told Ramos that he knew nothing about any threats against Plaintiff.  Day 2 Tr. 351:25-352:12.  Buckley also testified that when she interviewed Chowdhury and Saleh, both denied threatening Plaintiff.  Day 1 Tr. 119:6-17.

        Without any evidence beyond Plaintiff's report, Hilton management was unable to confirm that a threat occurred, and closed the investigation without terminating or otherwise disciplining Chowdhury or Saleh.  Day 1 Tr. 90:4-6; 183:23-25.  Nonetheless, at Plaintiff's request, Hilton management did agree to install security cameras in the area around Plaintiff's workspace.  Tr. 184:1-15.  At the conclusion of the investigation, Buckley submitted a report to

---

[1]    Plaintiff is a native of Ethiopia.  Amd. Compl. (Dkt. #18) ¶ 1.

[2]    During the investigation, Peter Hill became the Director of Human Resources for the Washington Hilton on June 18, 2007.  Joint Pretrial Statement at 4.  Hill died on August 8, 2008.  *Id.*

Akilu and Hill explaining that Plaintiff's report could not be substantiated.  Tr. 84:2-16; 102:25-103:3.

Plaintiff testified that he experienced significant anxiety following the threats.  *See, e.g.,* Day 1 Tr. 176:5-7.  When leaving work, Plaintiff would request a security escort to the bus because he believed Saleh, Saleh's friend, and other men were waiting for him at the bus stop. Day 1 Tr. 200:5-14.  Plaintiff testified that they did not threaten him, but he nonetheless believed they wanted to kill him.  Day 1 Tr. 188:15-16.  Plaintiff was also afraid in the Hilton locker room which he shared with Chowdhury, Saleh, and other employees.  Day 1 Tr. 170:5-8.

Plaintiff testified that because of "what happened to [him]," he developed a number of physical and psychological symptoms including sleeplessness, anxiety, back pain, and a delusional disorder.  Day 1 Tr. 180:1-22.  Plaintiff offered testimony from a number of medical experts, including his treating psychiatrist, Dr. Amit Patel, and his retained expert, Dr. Theodore Osuala.  Dr. Patel testified that he had diagnosed Plaintiff with a delusional disorder.  Day 2 Tr. 278:8.  Accordingly to Dr. Patel, it was not possible to determine the cause of a delusional disorder and such a disorder usually develops in adulthood for no apparent reason.  Day 2 Tr. 286:12-14; 287:8-288:5.  Dr. Osuala testified that Plaintiff suffered from a "psychotic disorder not otherwise specified with predominately delusional symptoms."  Day 2 Tr. 334:17-18.  Unlike Dr. Patel, Dr Osuala testified that he believed that, within a reasonable medical and psychiatric certainty, Plaintiff's disorder was caused by the threats he had received.  Day 2 Tr. 333:3-17.

### B.      Procedural Background

Plaintiff filed his original Complaint on November 17, 2008.  *See* Compl. (Dkt. #1).  An Amended Complaint was filed on March 1, 2010.  *See* Amd. Compl.  In his Amended Complaint, Plaintiff asserted claims of employment discrimination (Count One), intentional

infliction of emotional distress (Count Two), negligent hiring and retention (Count Three), and unreasonable publicity to private life (Count Four), and claimed damages for severe emotional distress and anxiety. *Id.* ¶¶ 5-43.

On September 20, 2011, Judge Henry Kennedy granted in part and denied in part Defendant's motion for summary judgment. *See* Sept. 30, 2011 Memorandum Opinion and Order (Dkt. #30). Judge Kennedy granted Defendant's motion as to Counts One, Two, and Four, and Count Three insofar as it asserted a claim for negligent hiring, leaving only Plaintiff's claim for negligent retention. *Id.* at 28. Following Judge Kennedy's retirement, the case was reassigned to the undersigned judge on April 3, 2012. *See* Dkt. #31.

As noted *supra*, a jury trial was held in this case from November 26, 2012 to November 28, 2012. *See* Nov. 26-Nov. 28, 2012 Minute Entries. Following the presentation of Plaintiff's evidence, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that Plaintiff "failed to establish the first four of the five elements" required for a claim of negligent retention. Day 2 Tr. 348:18-22; 397:24-399:19. The Court deferred ruling on Defendant's motion. Day 2 Tr. 399:20-22. Defendant renews its motion under Federal Rule of Civil Procedure 50(b).

## III.   ANALYSIS

Plaintiff alleges that he was assaulted by two of his co-workers, Chowdhury and Saleh, when they made verbal threats that put him in fear of imminent harm. Amd. Compl. ¶ 26. Plaintiff also claims that the he reported the alleged assault to the Defendant, but that the Defendant nonetheless retained the two employees, allowing them to threaten him further. *Id.* ¶ 27. The crux of Plaintiff's claim is that Defendant was negligent in retaining the two employees, and that Defendant's negligence proximately caused him to be assaulted a second time. *Id.* ¶¶

31-34.  Plaintiff argues that, as a result of that second assault, he has suffered severe emotional

distress.  *Id.* ¶ 29.  Plaintiff seeks damages for alleged "permanent injury" to his health, including

anxiety and delusional disorder, which he claims resulted from the repeated threats by

Chowdhury and Saleh.  Joint Pretrial Statement at 4.

### A.      Requirements for a Negligent Retention Claim

In the District of Columbia, an action for negligent retention "requires proof that the

employer breached a duty to plaintiff to use reasonable care in the . . . retention of an employee

which proximately caused harm to plaintiff."  *Phelan v. City of Mount Rainier*, 805 A.2d 930,

940 (D.C. 2002).  To invoke this theory of liability, a party must show both that the employer

"knew or should have known its employee behaved in a dangerous or otherwise incompetent

manner," and that the employer, despite that actual or constructive knowledge, "failed to

adequately supervise the employee."  *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 252

(D.D.C. 2011) (quoting *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001)).  At

trial, the jury was instructed, per the parties' earlier agreement, that Plaintiff was required to

prove the following:

> (1)   He was assaulted by his co-workers;
>
> (2)   The defendant knew or should have known of the assault;
>
> (3)   The defendant negligently retained these co-workers despite this actual or constructive knowledge;
>
> (4)   That the defendant[']s negligent retention *proximately caused the plaintiff to be further assaulted*; and
>
> (5)   Plaintiff suffered resulting injuries and damages.
>
> The plaintiff must prove each of the following:  that he was assaulted; that defendant had actual or constructive knowledge of the assault; *that he was further assaulted*; and that he suffered damages as a result of the second assault.

Day 3 Tr. (Dkt. #78) 55:1-12 (emphasis added).

In its motion, Defendant claims that Plaintiff failed to establish the first four elements of his claim for negligent retention.  *See* Mot. at 12.  However, if Plaintiff fails to establish any one of the elements, Plaintiff's claim fails overall.

### B.       Plaintiff Failed to Show a Subsequent Assault

Having reviewed the parties' briefs and trial transcript, the Court determines that Plaintiff has failed to put forth any evidence of a second assault.[3]

The D.C. Court of Appeals defines assault as "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim."  *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (quoting *Etheredge v. Dist. of Columbia*, 635 A.2d 908, 916 (D.C. 1993)).  In this case, as to those elements requiring an assault to have occurred, the jury was instructed as follows:

> Any intentional attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability to do so, and an intentional display of force such as would give the victim reason to fear or expect immediate bodily harm constitutes an assault.  An assault may be committed without actually touching or striking or doing bodily harm to the person of another.

Day 3 Tr. 54:13-19.

However, the parties also agreed that harassment that did not amount to "[t]hreats to [Plaintiff's] life or threats of bodily harm" would not be actionable as assault.  Day 1 Tr. 78:24-80:10.

Defendant argues that Plaintiff's claim fails on the fourth element of a cause of action for negligent retention, *i.e.*, "[t]hat the defendant[']s negligent retention proximately caused the

---

[3]     As Plaintiff's claim of negligent retention fails as a result of his failure to present evidence of a second assault, it is unnecessary for the Court to consider Defendant's arguments as to the remaining elements.

plaintiff to be further assaulted" (Day 3 Tr. 55:6-7), because Plaintiff has failed to present evidence of further assaults by Chowdhury and Saleh.  Mot. at 17.  Plaintiff responded by pointing to several portions of the transcript, claiming that the testimony indicated that Plaintiff was further assaulted by Chowdhury and Saleh subsequent to the initial assault.  Opp. (Dkt. #74) at 6.  Rather than quoting from the transcript, however, Plaintiff summarizes certain sections. There are key differences between Plaintiff's summaries and the cited text.

For instance, Plaintiff claims that Akilu testified that Plaintiff told him that he was fearful and believed that he was being followed "as a result of his allegations against Chowdhury and Saleh and their resulting, and *continued*, death threats."  Opp. at 6 (emphasis added).  The cited testimony concerns Plaintiff's statements to Akilu regarding his fear that someone was following him as he walked to the bus stop.  Day 1 Tr. 134:9-135:7.  However, Akilu also stated that, other than the alleged threats by Chowdhury and Saleh in May 2007—that is, the threats that prompted Defendant to conduct an investigation—Plaintiff did not report any other threat to his person or life.  Day 1 Tr. 134:4-8; 135:8-12.

Plaintiff also points to the testimony of Adhanom Gebrekidan, a Hilton security officer. Opp. at 6.  Plaintiff testified at trial that he told Gebrekidan "about the harassment threat in the locker room."  Day 1 Tr. 198:7-8.  Plaintiff, however, provided no additional details about what he discussed with Gebrekidan, or what Gebrekidan discussed with Chowdhury following that conversation, stating that he could not remember.  Day 1 Tr. 198:13-14.

In his own testimony, Gebrekidan testified that Plaintiff said, "[t]hese guys tried to kill me," and pointed to Chowdhury.  Day 1 Tr. 152:24-153:2.  Gebrekidan testified that, when he attempted to get Plaintiff to clarify, Plaintiff said, "[N]othing happened . . . don't worry about it," then "brushed [Gebrekidan] off and left."  Day 1 Tr. 153:8-17.

Plaintiff points to another incident that Gebrekidan described, quoting Gebrekidan's statement that Plaintiff said, "they tried to kill me." Opp. at 6. The context of that statement, however, makes clear that it did not involve Chowdhury, Saleh, or threats of any kind: "I saw him setting up some rooms. I say, hey, Mesafint, are you okay? . . . Oh, they tried to kill me. I said, who? . . . They gave me all these orders, I can't push it. . . . He said, I was pushing this heavy stuff on the carpet and they tried to kill me." Day 1 Tr. 153:22-154:6.

Plaintiff further points to his own testimony that he was "very scared" all of the time, and that he requested to be moved from working in close proximity with Chowdhury and Saleh. Opp. at 6. Such statements, however, do not indicate whether or not Plaintiff was assaulted a second time.

Finally, Plaintiff claims that he testified:

> He continually complained to Defendants [*sic*] security managers, including John Mouzon, that although, each time after their initial death threats against Plaintiff, both Chowdhury and Saleh continued to threaten his life each time they encountered Plaintiff in the employees' locker room, Defendant, throughout that entire time, completely ignored all of Plaintiff's urgent requests that he be transferred away from close proximity with Chowdhury and Saleh. Plaintiff testified that the security managers then told Plaintiff to "write them a Letter" each time that he was threatened by Chowdhury and/or Saleh, which Plaintiff then proceeded to do, but with this still not resulting in his transfer.

Opp. at 6-7 (citing Day 1 Tr. 170:2-19).

The testimony to which Plaintiff cites concerns his fears in the employee locker room: "I tried to complain this [*sic*] to security managers. . . . I complained my situation about how the threat affected my life; every time I come in and out, I was scared, and I sitting down by myself in the corner." Day 1 Tr. 170:4-8. *The testimony does not, however, allude in any way to subsequent assaults by Chowdhury and Saleh.* While Plaintiff references certain letters,

Plaintiff's alleged letters were excluded from evidence by this Court's Order on pretrial motions *in limine*, because they did not relate to actionable threats.  Day 1 Tr. 170:25-173:22.

Plaintiff's evidence, viewed in the most favorable light, could not allow a reasonable jury to find that a second assault occurred.  Plaintiff failed to elaborate on even a single incident of threatening behavior that would place him in fear of imminent bodily harm.  By Plaintiff's own admission, the people allegedly waiting for him at the bus stop did not threaten or otherwise assault him.  He merely believed that they were waiting to kill him for reasons unknown.  *See* Day 1 Tr. 188:15-16 ("Q: Do you also claim that there were three Arabs sitting together at a U Street bus stop threatening you?  A: Yes, not to threaten me, but waiting to kill me.  That was my fear.").

Plaintiff's only description of what transpired, a "harassment threat," is vague and unhelpful in eliciting the details of the encounter.  *See* Tr. 198:7-8.  Any attempt to infer that the alleged assault occurred in the locker room is hindered by the fact that there is no supporting testimony from witnesses or the Plaintiff himself to animate the scene.  Without more, a reasonable jury would be left merely speculating as to what happened that day.  This is insufficient to satisfy Plaintiff's burden.  *See Richardson v. Richardson-Merrell*, 857 F.2d 823, 828 (D.D.C. 1988) ("[T]he question … is not whether there was *some evidence*, but whether, in terms of the actual quantum and quality of proof necessary to support liability, there was *sufficient evidence* upon which a jury could properly base a verdict") (emphasis in original) (internal quotation marks omitted).  Taken as a whole, Plaintiff's evidence is not sufficiently probative for a reasonable jury to find that a second assault occurred.

**THEREFORE**, it is hereby **ORDERED** that Defendant's motion for judgment as a matter of law is **GRANTED.**

A separate Order will issue consistent with this Memorandum Opinion.

August 5, 2013

_____
BARBARA J.  ROTHSTEIN
UNITED STATES DISTRICT JUDGE